IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ISIAH DANIELS,

     Petitioner,                         No. 2:10-cv-3347 KJM DAD P

    vs.

G. SWARTHOUT, Warden,            FINDINGS & RECOMMENDATIONS

     Respondent.

                            /

         Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Therein, petitioner challenges his July 15, 2008 prison disciplinary conviction for "visiting violations presenting a threat to institutional security," and a resulting loss of 30 days of time credits. Petitioner seeks relief on the following grounds: (1) the hearing officer pre-determined petitioner's guilt, in violation of his right to a fair and impartial hearing; (2) the hearing officer violated petitioner's constitutional rights by falsifying documents in order to obtain a guilty finding; and (3) petitioner did not receive adequate notice of the charges against him. Petitioner requests that the court provide him with a new disciplinary hearing that comports with due process.

         In light of events that have occurred subsequent to the filing of petitioner's habeas petition, and upon careful consideration of the record and the applicable law, the undersigned

recommends that petitioner's application for habeas corpus relief be denied as moot.

BACKGROUND

Petitioner is serving an indeterminate life prison term following his 1997 convictions for assault and kidnapping for the purpose of robbery. (Doc. No. 1 (Pet.) at 1; Doc. No. 23 (Answer) at 1.)

On May 2, 2008, Correctional Officer (C/O) Robinson wrote a rules violation report (Log. No. S3-08-05-0368) (hereinafter "RVR") charging petitioner with "sexual disorderly conduct," in violation of 15 CCR § 3007. (Pet. at 17.) Officer Robinson alleged as follows:

> On 05-25-08, at approximately 1301 hours, while monitoring visiting room video surveillance camera number 6, I observed Inmate DANIELS (K-37959, 14-V-2-L), and his female visitor standing adjacent to the grille gate embrace [sic] and kissing at the conclusion of their visit. I then observed Inmate DANIELS placed [sic] his right hand under her jacket and used it to shield his massaging her left breast. His right arm was bent at the elbow and was moving in a circular/back and forth motion consistent with massaging of the breast. I paged Inmate DANIELS via public announcement (PA) and instructed him to report to the staff podium. When he approached the podium, I informed him of what I had observed and that he would be receiving a CDCR-115 for his conduct. Inmate DANIELS is aware of policy, rules and regulations governed by CSP-Solano Visiting. Correctional Sergeant Jimenez (Visiting Sergeant) was notified and informed about the above violation.

(Id.) The charge against petitioner was classified as a serious Division F offense. (Id.)

On June 17, 2008, the disciplinary hearing on the RVR commenced. (Id. at 18.) Petitioner acknowledged that he had received a copy of the RVR and the surveillance video more than 24 hours in advance of the hearing. (Id.) According to the report of the disciplinary proceedings, petitioner "waived all witnesses" and the hearing officer "requested none." (Id.) After it was discovered that the video equipment could not play the video surveillance tape, the disciplinary hearing was postponed to June 21, 2008. (Id.) Petitioner reviewed the videotape prior to the June 21, 2008 hearing. (Id.) Petitioner pled not guilty to the charge and gave the following testimony in his defense: "I didn't do it." (Id. at 19.)

2

After the disciplinary hearing concluded, Senior Hearing Officer (SHO) R. Hayward found petitioner not guilty of the charged offense on the grounds that the surveillance video did not reflect that petitioner "had his hands on or that he was massaging his visitor's breast." (Id.) However, he did find petitioner guilty of "the lesser and included charge" of a violation of 15 CCR § 3315(a)(3)(N): "visiting violations presenting a threat to institutional security," (Id.) The SHO explained:

> In this instance, the offense involved exceeding the boundaries of physical contact allowed by institutional regulations and/or indecent exposure by the inmate of his visitor. Indecent exposure requires evidence of the deliberate exposure of the genitals or other private parts of the body under circumstances likely to cause affront or alarm. Because unauthorized physical contact is used to pass contraband and this offensive conduct was in a public area accessible to minors, this misconduct poses an immediate threat to institutional security.

(Id.) Petitioner's disciplinary conviction was based on the statements of C/O Robinson in the RVR and the surveillance video, which "depicts inmate DANIELS inappropriately had his hands underneath his visitors jacket and touching his visitor's waist and stomach areas, which violates the visiting rules." (Id.)

After exhausting the administrative appeals process, petitioner challenged his disciplinary conviction in a petition for writ of habeas corpus filed in the Solano County Superior Court. (Docs. 13-1, 13-2 at 1-7.) The Solano County Superior Court rejected petitioner's claims, ruling as follows:

> In a petition for a writ of habeas corpus filed with this court on October 2, 2009, Petitioner Isiah Daniels alleges that he was wrongfully found guilty of "visiting violations presenting a threat to institutional security."
>
> Petitioner fails to state a prima facie case establishing that he is entitled to relief (People v. Duvall (1995) 9 Cal.4th 464, 474-475.)
>
> The record of Petitioner's disciplinary hearing contains at least the modicum of evidence necessary to uphold the decision of the hearing officer. (Superintendant, Mass. Corr. Inst., Walpole v. Hill (1985) 472 U.S. 445, 455; In re Wilson (1988) 202 Cal. App.3d 661, 670.) Video evidence established that Petitioner had touched

3

> his visitor's waist and stomach areas underneath the visitor's jacket. Prison regulations prohibit all bodily contact between an inmate and a visitor other than to hold hands or to briefly embrace and kiss at the beginning and the end of the visitation. (Cal. Code Regs., Title 15, § 3175, subdivisions (d)-(e), (g).) The touching, under an article of outer clothing, could have been used as a vehicle to pass contraband to an inmate, which can reasonably be construed as a threat to institutional security. Although the Court concedes that the touching may have been innocent and the Court might have reached a different verdict had it presided over the disciplinary hearing, the Court's review is limited to a determination of whether some evidence supports the outcome without reassessing or reweighing the evidence. (Hill, 472 U.S. at 455.)
>
> To the extent that Petitioner claims procedural due process violations, he fails to establish that he was denied the minimum safeguards of a hearing, advance written notice, opportunity to present witnesses and documentary evidence, and written reasons for the decision that are required for a prison disciplinary hearing. (Wolff v. McDonnell (1974) 418 U.S. 539, 566; In re Davis (1979) 25 Cal.3d 384, 391.) Even if Petitioner's self-serving allegations of violations can be believed, such as his claim that he did request witnesses despite the hearing officer's report indicating that witnesses were waived, he fails to demonstrate any prejudice from the alleged due process violation, especially in light of the video evidence upon which the hearing officer primarily relief. (Chapman v. California (1967) 386 U.S. 18, 24; People v. Roldan (2005) 35 Cal.4th 646, 735; In re Angela C. (2002) 99 Cal. App.4th 389, 291; People v. Belton (1992) 6 Cal. App.4th 1425, 1433.)
>
> Accordingly, the Petition is denied.

(Pet. at 44-46.)

Petitioner subsequently filed a petition for writ of habeas corpus in the California Court of Appeal for the First Appellate District. (Doc. No. 13-2 at 13-41.) On January 7, 2010, the California Court of Appeal denied that petition due to petitioner's failure to use the required form and to include a copy of the lower court's order with his petition. (Doc. No. 13-3 at 2.) Petitioner subsequently submitted a second petition to the California Court of Appeal, which was summarily denied on February 26, 2010. (Id. at 4-43.) Finally, petitioner filed a petition for review in the California Supreme Court. (Id. at 45-87.) On April 28, 2010, the California

4

Supreme Court denied that petition. (Id. at 90.)

On December 13, 2010, petitioner commenced this action by filing a federal petition for writ of habeas corpus in this court.

## ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision. Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).

/////

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[1] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington,131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a

---

[1] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

6

reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S. Ct. at 784.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a

federal habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).[2]

II.  Petitioner's Claims

    A.  Biased Hearing Officer

Petitioner's first claim for relief contained in the instant federal habeas petition is that he was denied the right to a "fair and impartial hearing" because SHO Hayward wrote and signed an informational chrono three weeks prior to petitioner's disciplinary hearing in which stated that petitioner was found guilty of the original charge against him and, as a result, petitioner's visiting privileges would be suspended.  (Pet. at 5.)  Petitioner argues that this chrono demonstrates that his guilt was "predetermined" by SHO Hayward.  (Id.)  He explains that Hayward's signature on this chrono "had already sealed petitioner's fate as guilty" and that "LT. Hayward was not impartial, but prejudice."  (Id. at 30.)  Petitioner concludes that

> What is clear is that petitioner was informed of his guilt (21) twenty-one days before his hearing started.  Petitioner hearing was held by the same CDC officer, LT. Hayward, who manufactured the CDC 128-A informing him of his guilt 21 days before his hearing.  No reasonably thinking person can consider this a fair and impartial hearing as described in our State and Federal Constitution.

(Id. at 36-37.)

Included in several of the exhibits attached to respondent's answer to the pending petition is a document which appears to be an informational chrono dated May 26, 2008, which provides as follows:

> As the result of a GUILTY finding on CDCR-115 Log # S3-08-05-0368, for a violation of CCR § 3007, for the specific act of "SEXUAL DISORDERLY CONDUCT," Inmate DANIEL's (K-37959, 14-V-2-L) VISITING privileges shall be SUSPENDED for

---

[2] The United States Supreme Court has recently granted certiorari in a case apparently to consider this issue.  See Williams v. Cavazos, 646 F.3d 626, 639-41 (9th Cir. 2011), cert. granted in part, ___U.S.___, 132 S. Ct. 1088 (2012).

8

       THIRTY (30) DAYS during the following dates: <u>05-26-08</u> to <u>06-25-08</u>.

       Final Copy to I/M on: <u>07/16/08</u>, at About 2630 hours, by Officer: <u>Ramirez</u>.

(Doc. No. 23-1 at 30.)  This chrono is signed by R. Hayward, the hearing officer who presided at petitioner's subsequent disciplinary hearing.  (Id.)

       Petitioner also claims that "the events at the initial hearing were not authentically documented, statements were fabricated, petitioner can go on and on." (Pet. at 37.)  Petitioner also appears to be arguing that SHO Hayward met with the reporting employee and witnesses after the original hearing date was postponed, where they viewed the surveillance videotape and then changed the disciplinary charge against petitioner and reissued another RVR prior to his second disciplinary hearing.  (Id. at 22.)

    B.  <u>False Documents</u>

       In his second ground for relief, petitioner claims that SHO Hayward violated his "constitutional rights" when he "falsely stated and documented that petitioner's charge was classified as a division E-7 to insure a conviction of a lesser violation than petitioner was charged with." (Id. at 7.)  Petitioner also alleges that the written reports of the disciplinary proceeding were inconsistent with regard to which witnesses were called and who testified at the hearing. (Id. at 28-29, 30-31, 35-36.)  He contends that SHO Hayward falsified the RVR by stating that no witnesses testified during hearing, when in fact C/O Robinson and Sgt. Jimenez testified "via telephone, concerning what they viewed on the visiting room monitors that day." (Id. at 22, 35.) Petitioner further explains that his "contention is that CDC officials have falsified documents and events within this hearing in order to convict petitioner of one of (these) charge(s) that he has been faced with." (Id. at 28.)

       Petitioner also argues that the disciplinary charge on which he was found guilty is not a lesser charge, but rather "a totally separate charge with just as serious consequences." (Id.

at 31.) In this regard, he explains:

/////

> CDC Officials writes decision implying that petitioner was originally charged with a Div. E (7) charge and it was dropped to a lesser Div. f.  No where has it been stated or states that this charge was ever a div. E (7).  Petitioner was found not guilty of a Div. F RVR-CDC 115, but found guilty of a separate charge also classified as a Div. F with the same consequences, same adverse affect.  How is it the lesser?  This is a violation of petitioner due process rights.

(Id. at 36.)

Petitioner informs the court that he was simply "kissing his wife goodbye at the end of their visit – which is allowable by CCR Title 15 3175," and that there was "no threat." (Id. at 29.) He contends that he did not "meet any of the criterias to be a threat to this Institution." (Id.) Petitioner also argues that "there is no rule posted for what petitioner is being charged and petitioner finds no rule written after researching." (Id. at 30.) He argues that, once prison officials determined that he was not guilty of the original charge, they charged him with another violation because "it's clear CDCR Official want a conviction no matter what has to be done." (Id. at 32.) Petitioner states that "it is unclear to petitioner where and how he has violated CCR 3315" because his conduct was within the prescribed "boundaries." (Id. at 33.) He states, "it is clear petitioner has been found guilty of a new unwritten violation he has not committed." (Id. at 34.)

### C. Adequate Notice

In his third ground for relief, petitioner claims that he was not given adequate notice of the charges against him because "after finding petitioner not guilty of RVR 3006, Senior Housing Officer change the charges to a totally different charge without affording petitioner the right to defend himself as required by the constitution." (Id. at 8.) He contends that:

> Petitioner's CDC RVR was changed at least 4 times on the form.

10

> From CCR 3007 to 3175 on 6/13/08, on June 17th petitioner hearing was postponed. Then on 6/21/08, charging petitioner with 3007 (again). Between 7/10/08 to 7/28/08, CDC RVR was changed again, but this time to the rubber stamp, "Presenting a threat to the safety and security of this institution," violating petitioner rights to a fair and impartial hearing.

(Id. at 30.)³ Petitioner argues that "after at least 4 changes of the charge within the duration of these proceedings petitioner was ultimately found guilty of a totally separate charge." (Id. at 34.) Petitioner asserts that he "was not even aware the charge was changed until he reviewed his final disposition." (Id. at 30.)

III. Subsequent Events

On August 3, 2012, this court issued an order directing respondent to file a brief explaining the authenticity and significance of the May 26, 2008 chrono authored by Lieutenant Hayward, described above, in connection with petitioner's first claim for relief. In response, respondent advised the court that Lieutenant Hayward had retired and could not be located, but that due to the appearance of impropriety arising from the existence of that chrono, the disciplinary charge against petitioner would be re-issued and reheard. (Doc. 25.) In a subsequently filed status report in this action, respondent informed the court that:

> The rules violation was reissued and reheard on September 17, 2012; however, a mistake was made and the original SHO's disposition was used. To obtain complete independence and eliminate all references to the original SHO and his findings, the rules violation had to be reissued and reheard a second time. Accordingly, the rules violation was again reissued and reheard on October 4, 2012.

(Doc. 29 at 2.)⁴

Respondent has now filed with this court documentation regarding petitioner's

---

³ The RVR supports petitioner's allegations in this regard. In the space for "violated rule No(s)," the RVR reflects that several numbers were crossed out and re-entered. (Pet. at 17.)

⁴ Petitioner informs the court that he was found not guilty of the disciplinary charge after the first rehearing on September 17, 2012. (Doc. 28 at 2; Doc. 30 at 2.)

11

disciplinary hearing with respect to the re-issued charge held on October 4, 2012.  After that hearing, Senior Hearing Officer Hal Williams found petitioner guilty of "visiting violations presenting a threat to institutional security," a Division F(3) offense.  (Doc. 29-1 at 10.)  Petitioner's disciplinary conviction was based on the rules violation report and the telephonic testimony of Correctional Officer E. Robinson, who stated that on the day in question he observed petitioner's actions in the visiting room over a live monitoring system.  (Id. at 11-12.)[5]  As a result of the conviction, petitioner was assessed 30 day credit forfeiture and a 30 days loss of visitation privileges.  (Id. at 12.)  Pursuant to the Rules Violation Report, petitioner's credit forfeiture will be adjusted to reflect credit for any "previously assessed credits."  (Id.)  In this regard, respondent represents that petitioner "will not be assessed double credit forfeitures and loss of visitation."  (Doc. 29 at 2.)  Respondent requests that the instant petition for federal habeas relief be denied as moot since petitioner has now received a new hearing on the disciplinary charges against him and has therefore received all of the relief that he seeks in the instant petition.

IV.  Analysis

A case is moot if it does not satisfy the case-or-controversy requirement of Article III, § 2, of the Constitution.  Spencer v. Kemna, 523 U.S. 1, 7 (1998).  "The case-or-controversy requirement demands that, through all stages of federal judicial proceedings, the parties continue to have a personal stake in the outcome of the lawsuit."  United States v. Verdin, 243 F.3d 1174, 1177 (9th Cir. 2001) (internal quotation marks and citation omitted).  "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'"  Spencer, 523 U.S. at 7 (quoting Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990)).  A case is moot

---

[5] Respondent advises the court that, due to the passage of time, the videotape depicting petitioner's conduct in the visiting room on the day in question could not be located and is no longer available.  (Doc. 29 at 2, n.1.)

12

when an intervening event renders it impossible for the court to grant "any effectual relief whatsoever." Calderon v. Moore, 518 U.S. 149, 150 (1996) (quoting Mills v. Green, 159 U.S. 651, 653 (1895)). A court cannot grant any effectual relief where a party has already received the relief he sought in his lawsuit. In re Burrell, 415 F.3d 994, 998 (9th Cir. 2005). See also Friedman's Inc. v. Dunlap, 290 F.3d 191, 197 (4th Cir. 2002) ("[O]ne such circumstance mooting a claim arises when the claimant receives the relief he or she sought to obtain through the claim.").

All of the claims for federal habeas relief presented in the instant petition pertain to the sufficiency of the evidence and alleged due process violations at petitioner's disciplinary hearing held on May 2, 2008. Those claims were rendered moot when that disciplinary conviction was rescinded and reheard. Through the rehearing process, petitioner has received all of the relief sought in the instant habeas petition; to wit, cancellation of the May 2, 2008 findings of SHO Hayward and a new disciplinary hearing that does not suffer from the same due process defects that tainted the May 2, 2008 hearing. Accordingly, this action has been rendered moot and federal habeas relief in response to the pending petition should be denied on that basis. See Jones v. Jett, No. 10-4201 MJD/AJB, 2011 WL 5507222 (D. Minn. 2011 Aug. 12, 2011) (where the rehearing of disciplinary conviction was held, claims related to original disciplinary conviction were rendered moot); Craft v. Jones, No. CIV-11-728-HE, 2011 WL 5509876, at *1 (W.D. Okla. Nov. 10, 2011 (rehearing of a prison disciplinary charge "moots any constitutional violations that may have occurred in the first disciplinary hearing"); Veal v. Jones, No. CIV-08-350-F, 2009 WL 365940 (W.D. Okla. Feb. 12, 2009) (where rehearing of a disciplinary conviction was ordered and the findings of the hearing officer set aside, claims related to the original disciplinary conviction were moot); Sloley v. O'Brien, No. 7:07cv00507, 2008 WL 2852023 (W.D. Va. July 22, 2008) (due process claims relating to a disciplinary conviction found to be moot where the case was remanded for rehearing of the disciplinary action ); Rojas v. Driver, No. 5:06CV88, 2007 WL 2789471 (N.D.W.Va. Sept. 24, 2007) (petitioner's claims

related to a disciplinary hearing were rendered moot where the disciplinary action was remanded for rehearing, at which petitioner was again found guilty of charges); Anderson v. Evans, No. CIV-05-1145-L, 2006 WL 1049618 (W.D. Okla. April 17, 2006) (where a prisoner complained about a disciplinary hearing, and the same penalties were imposed upon rehearing, his claim was found to be rendered moot).

There is an exception to the mootness rule for individuals "who would suffer collateral legal consequences if their convictions were allowed to stand." Larche v. Simons, 53 F. 3d 1068, 1070 (9th Cir. 1995). However, petitioner bears the burden to show that such collateral consequences exist. United States v. Meyers, 200 F.3d 715, 722 (10th Cir. 2000). Here, petitioner has not alleged nor made any showing, that collateral consequences continue to flow from his May 2, 2008 prison disciplinary conviction even though that conviction has been set aside.[6]

Petitioner has filed two supplemental briefs in support of his argument that this action was not rendered moot by the rehearing of the disciplinary charge against him held on October 4, 2012. He first argues that there were procedural irregularities in connection with the October 4, 2012 rehearing. (Doc. 28 at 1-3; Doc. 30 at 3.) Specifically, he argues that the signatures on the notice of rehearing were "crossed out and advanced one day forward." (Doc. 28 at 1.) Petitioner also contends that the hearing officer at the second rehearing on October 4

---

[6] The mere possibility that petitioner could receive a harsher sentence in any future criminal proceeding because of the disciplinary conviction at issue here does not constitute a sufficient collateral consequence because a habeas petitioner is expected to prevent such a possibility by avoiding violations of the law. Spencer, 523 U.S. at 13-15. Likewise, allegations that a rules violation finding may result in a delay or denial of parole involve discretionary decisions too speculative to constitute sufficient proof of such collateral consequences triggering application of the exception. Id. at 481–82; see also Wilson v. Terhune, 319 F. 3d 477, 481-82 (9th Cir. 2003). Any other non-statutory consequences of the challenged disciplinary conviction, such as its effect on employment prospects, are also insufficient to establish an exception to mootness. Lane v. Williams, 455 U.S. 624, 631-33 (1982). In short, any possible future consequences flowing from petitioner's disciplinary conviction in this case would appear to be too speculative to justify the granting of relief. See Wilson, 319 F. 3d at 482 (presumption of collateral consequences does not apply to prison disciplinary proceedings).

14

violated the Double Jeopardy Clause by punishing him again for the same conduct. (Id.) He also contends that he was unable to call witnesses at that disciplinary hearing because SHO Hayward has retired and is now unavailable, and he was "not offered the opportunity" to question retired reporting officer Robinson. (Doc. 30 at 3.) Petitioner also asserts that the report of the second rehearing misquotes his testimony. (Doc. 28 at 2.) Finally, petitioner complains that respondent has failed to come forward with documentation of the first rehearing on the re-issued disciplinary charge which was held on September 17, 2012, at which petitioner was found "not guilty," and has still failed to explain the circumstances surrounding the May 26, 2008 chrono signed by SHO Hayward. (Doc. 28 at 2; Doc. 30 at 2.) Accordingly, petitioner requests that this court conduct an investigation into "these latest two hearings," that his habeas petition be granted, and that the court continue to exercise jurisdiction "over any further proceedings until these matters are completed." (Doc. 30 at 4.)

Petitioner's allegations with respect to the rehearings on the re-issued disciplinary charge are not properly before the court in this federal habeas corpus action. Petitioner's challenges to the disciplinary conviction he suffered at the completion of the October 4, 2012 rehearing may be brought in a separate action. However, they are not properly a part of the instant federal habeas action, which challenges only petitioner's May 2, 2008 disciplinary conviction. In this regard, any time credit loss that petitioner has suffered is now clearly the result of his October 4, 2012 disciplinary conviction, and not the original May 2, 2008 disciplinary conviction that was set aside. The court also notes that any challenges on due process grounds or otherwise that petitioner has to the October 4, 2012 rehearing have not been exhausted in state court.

## CONCLUSION

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied as having been rendered moot.

These findings and recommendations are submitted to the United States District

15

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: November 13, 2012.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:
daniels3347.hc